## RILEY vs. THE CITY OF ROCHESTER.

As a general rule, *it seems* that municipal corporations are not capable of holding real estate lying without their geographical boundaries, unless the legislature has conferred upon them that capacity.

But the mayor and common council of the city of Rochester being declared by their act of incorporation to be capable in law of purchasing, holding and conveying any estate real or personal, for the public use of said city, without any restriction, in terms, as to the place where the estate is to be situated, they are not restricted to lands lying within the bounds of the city.

Acordingly *held* that lands having been conveyed to the corporation for the purposes of public streets, which lands, at the time of the conveyance extended partly beyond and without the bounds of the city, but were afterwards embraced within the city limits, they might lawfully be entered upon by the corporation, for the purpose of being improved and opened as a public street.

DEMURRER to replication.    The caption of the declaration was of August 2d, 1847, charging the defendants in trespass, for breaking and entering the close of the plaintiff, alledging that said close was laid out into city lots, situate and being in the city of Rochester in the county of Monroe, setting out the boundaries of said close ; and that the said defendants then and there by their agents and servants, with cattle, horses, &c. and with divers carts, wagons, &c. and with plows, scrapers, spades, &c. did plow, dig up, subvert, damage, dispoil and remove the earth of the said plaintiff of great value, &c. and with divers other men and servants, &c. opened, worked and turnpiked a highway or street through and across said close, in a diagonal direction, from, &c. to, &c. on a line with Summit-street, without the leave or license and against the will of the plaintiff, to his damage of $500.    The declaration contained various other allegations with a view to enhance the plaintiff's damages, which it is not necessary to state in order to understand the questions decided.

The defendants' second plea stated that Josiah Bissell, jun. and Enos Stone, on the 28th day of December, 1827, made their certain deed in writing, their own proper hands and seals being thereto affixed (with a profert of the deed,) and then and there delivered the same to the trustees of the village of Rochester.

Riley *v.* City of Rochester.

The plea then set forth the deed *in hæc verba*, by which it appeared that Bissell and Stone in consideration of one dollar, &c. conveyed to the trustees of the village of Rochester, in their actual possession then being, and to their successors in office and assigns forever, two pieces or parcels of land therein described, situate in the town of Brighton. The *habendum* clause was in the following words : " To have and to hold the said two several pieces and parcels of land above described, to the said parties of the second part and to their successors in office forever hereafter ; for the sole and only use and trust and confidence, that the two several above described pieces and parcels of land shall forever hereafter be used, occupied, and enjoyed as public streets for the use of the corporation known as the trustees of the village of Rochester, and for no other or different use or purpose whatsoever." The plea then averred that at the time of the execution and delivery of the said deed, the said Josiah Bissell, jun. was seised in fee and in possession of the said land therein described, and that the said defendants, by force of the statute in such case made and provided had become seised and possessed of all the right, title and interest of the said, the trustees of the village of Rochester in the said land described in the said deed, and that the same were a common and public street and that the said defendants, their officers or agents ·improved the part of .the said land in the said deed described, from Riley-street to Union-street in said city as a public street, which were the said · supposed trespasses in the said declaration mentioned.

To this plea the plaintiff replied that all that part of the said land in the said deed in the said defendants' second plea mentioned and described, as having been improved as a public street from Riley-street to Union-street, in said city of Rochester, was, at the time of the execution and delivery of the said deed, situated wholly and entirely beyond the bounds and limits of the village of Rochester in said plea mentioned ; concluding with a verification.

The defendants demurred to this replication and assigned for cause, 1st. That the said replication was no answer to the plea. 2d. That the replication did not alledge that the land therein

mentioned was not a public street in said city at the time of the committing of the said supposed trepasses.

The plaintiff joined in demurrer. The demurred was argued by

*R. Haight,* for the defendant.

*J. B. Bennett,* for the plaintiff.

*By the Court,* WELLES, J. One of the questions in this case is whether the trustees of the village of Rochester were competent by law to receive a title to lands out of and beyond its corporation bounds, at the time of the conveyance in question from Stone and Bissell. The pleadings admit at the time the conveyance was made, Bissell was seised in fee and in possession of the *locus in quo.* At that time (December 28th, 1827,) the premises conveyed were situated partly within, and extended beyond and without the bounds of the village, and that part of them where the alledged trespasses were committed, was beyond the village bounds. The bounds of the city of Rochester, at the time of the alledged trespasses, embraced the *locus in quo,* and the alledged trespasses were the improvement by the city authorities of the land for a public street. The conveyance was to the trustees of the village of Rochester and their successors and assigns forever, for the sole and only use, trust and confidence, that the premises conveyed should be used, occupied, and enjoyed as a public street for the use of the corporation known as the trustees of the village of Rochester.

By section three, of title ten, of the act to incorporate the city of Rochester, passed April 28th 1834, (*Sess. Laws of* 1834, *p.* 340,) the money, funds, effects and property of every description, belonging to the trustees of the village of Rochester, are declared to belong to and be vested in the mayor and com mon council of the city of Rochester, and all debts and demands against the said trustees are declared to be valid and subsisting debts and demands against the said mayor and common council, and are to be paid by them in the same manner as the said trustees were liable to pay the same. By the act to incorporate

the village of Rochesterville, passed March 21st, 1817, (*Session Laws of* 1817, *ch.* 96,) it is provided in section three, among other things, that the trustees shall be " capable in law of purchasing, holding, receiving and conveying any estate real or personal for the public use of said village," &c. The act to incorporate the village of Rochester, passed April 10, 1826, (*Id.* 1826, *p.* 112, § 1,) contains the same provision.

I am inclined to the opinion that, as a general rule, municipal corporations are not capable of holding real estate lying without their geographical boundaries, unless the legislature has conferred upon them that capacity. But that is a different question from the one whether it is competent for the legislature to endow them with that capacity. There can be no doubt, it seems to me, but what that may be done. And the question here is whether it has been done in the present case. The trustees of the village of Rochesterville are declared by their act of incorporation, to be capable in law of purchasing, holding and conveying any estate, real or personal, for the public use of said village. Here is no restriction in terms as to place where the estate is to be situated. There is a restriction upon the objects for which such estate may be purchased, held, received and conveyed, viz. that it must be for the public use of the village. I cannot think it was intended to restrict the corporation to lands lying within its bounds. If it was, the language employed would apply as well to personal as real property. It would have been perfectly easy, and if that had been the intention of the legislature, it seems to me, they would have so expressed it, while making the other restriction mentioned. It would have been unnecessary and unreasonable to have imposed the restriction contended for, and entirely reasonable and proper to omit it. All that was necessary the legislature have done, which was to limit the right to objects for the public use of the village. The construction contended for might operate most inconveniently, without subserving any beneficial purpose. Suppose this corporation should purchase a pest house, or purchase, lay out, and ornament grounds for a cemetery beyond its corporate bounds, and should purchase ground for a right of way to it, would it

Sheldon *v.* Peck.

not be absurd to say that under the powers of their charter they had no right to do it? By the 20th section of the act to incorporate the village of Rochester, passed in 1826, above referred to, the trustees have the power to lay out, make and open any street, alley, road or highway, in any part of the village, &c. and to cause the same to be opened, &c. whenever, and as often as they shall judge the public good requires the same to be done. Suppose, under this power, they should lay out and open a street, extending to the boundary line of the village, and the public good required the extension of the street, so as to intersect a public highway beyond those bounds, or to some other important point, can it be doubted but the trustees would have the power to purchase and hold land sufficient for that purpose, under the provision of the charter which authorizes them to purchase and hold property, real and personal, for the public use of the corporation?

The city of Rochester having succeeded to the rights of the village of Rochester, I think they had a right to enter upon the lands in question, for the purpose of improving the same as a public street, which the replication admits, by not denying the averment of the fact in the plea, to have been the trespasses complained of.

As this view of the case disposes of the demurrer, it becomes unnecessary to examine the other questions raised by the counsel.

There must be judgment for the defendant on the demurrer, with leave to the plaintiff to amend his replication, on payment of costs.

[MONROE GENERAL TERM, September 5, 1850. *Welles, Selden* and *Johnson,* Justices.]